(107 So. 484)

No. 27364.

### STATE v. RICHEY et al.

(Feb. 1, 1926. Rehearing Denied March 1, 1926.)

*(Syllabus by Editorial Staff.)*

1. **Criminal law ⬅404(4).**

Stolen auto parts *held* sufficiently identified to permit their admission in evidence.

2. **Criminal law ⬅741(1), 742(1).**

Weight and effect of testimony identifying stolen goods was for jury.

3. **Receiving stolen goods ⬅7(5).**

Indictment describing stolen property received as Ford automobile parts *held* to include seat covers and horn not manufactured by Ford.

4. **Criminal law ⬅600(1)—Admission as testimony of absent witness of single sale of auto tires to defendant inadmissible to show frequent purchases of auto parts in course of trade.**

In trial for receiving stolen auto parts, district attorney's admission as testimony of absent witness of single sale of tires to defendant by absent witness *held* inadmissible to show that defendants were frequent purchasers of auto parts in course of trade, especially where such tires were of different make from stolen ones.

5. **Criminal law ⬅1170½(5)—Cross-examination of defendant's witness held prejudicial error as relating to material fact not traversing direct testimony nor referred to in state's evidence in chief.**

In trial for receiving stolen auto parts, cross-examination of defendant's witness as to statement that he saw defendant throw certain auto parts into his backyard, with exclamation that "he didn't have to work for them," *held* prejudicial error; such statement not traversing or contradicting witness' testimony in chief that he sold an automobile to defendant, and inquiry relating to material fact, as to which state had introduced no evidence in chief.

6. **Witnesses ⬅269(1)—Cross-examination of defendant's witness confined to matters brought out in chief, except to test memory and credibility, or lay basis for impeachment.**

Cross-examination of defendant's witness must be confined to matters brought out in examination in chief, except to test memory and credibility, or lay basis for impeachment.

7. **Witnesses ⬅268(1)—State cannot cross-examine defendants' witness as to matters not brought out, on direct examination or state's evidence in chief for impeachment purposes or introduction of original evidence.**

State cannot cross-examine defendant's witness as to matters, not brought out in direct examination or state's evidence in chief for purpose of impeaching him or opening door to introduction of original and primary evidence.

8. **Criminal law ⬅1119(2).**

Supreme Court cannot consider facts not in bill of exceptions, in determining whether proper foundation for impeaching witness was laid.

9. **Criminal law** ☞448(7), 683(1)—**Receiving stolen goods** ☞8(2)—**Prosecuting witness' testimony as to whether battery mentioned in indictment for receiving stolen goods appeared to have been lying around for long time held admissible in rebuttal, relevant, and not mere opinion.**

In trial for receiving stolen auto parts, prosecuting witness' testimony as to whether battery mentioned in indictment appeared to have been lying around defendant's house for long time *held* admissible in rebuttal of defendant's testimony that it did so appear, relevant, and not mere opinion.

10. **Criminal law** ☞1111(3).

Supreme Court will accept trial judge's statements in bills of exceptions that requested charges were fully covered by general charge.

Appeal from Ninth Judicial District Court, Parish of Rapides; R. C. Culpepper, Judge.

Eugene Richey and Jesse Richey were convicted of knowingly receiving stolen property, and they appeal. Conviction and sentence set aside, and case remanded for new trial.

John R. Hunter, of Alexandria, for appellants.

Percy Saint, Atty. Gen., Percy T. Ogden, Asst. Atty. Gen., and Cleveland Dear, Dist. Atty., of Alexandria (E. R. Schowalter, of New Orleans, of counsel), for the State.

THOMPSON, J. The two defendants were convicted of knowingly receiving stolen property, and, from a sentence of a term in the penitentiary, prosecute this appeal.

The property as set out in the original indictment was simply described as Ford automobile parts.

In response to a request for a more specific description, the property was alleged to consist of four auto car wheels, three auto tires, four tubes, two auto headlights, one car floor mat, two seat covers, one generator and one starter for Ford automobile, one automobile horn, Ford automobile coils, and one automobile battery.

[1, 2] When the state, on trial of the case, and after having examined the alleged owner of the property as to its identity, offered the said property in evidence, the defendants objected, on the ground that the property had not been identified by the prosecuting witness or by any other witness. It was contended that the only part of the property identified was the seat covers and horn, and these were not admissible because not included in the charge.

It is stated in the bill of exception that the prosecuting witness had sworn that all of the parts described were his property and were on his Ford car when they were stolen; that the horn was formerly taken from a Hudson car, but was attached by him to his Ford car; that the seat covers were manufactured by some company other than the Ford factory, but that he had bought them with his Ford car, and he was using the horn and seat covers on his Ford car as parts of said car when it was stolen.

It is true the witness stated that, while he was certain that all of the auto parts mentioned were his and were the identical parts which were on his car, he would only swear to the horn and seat covers.

Taking the whole of the witness' testimony together, we think the identity of the property was sufficiently established to permit the offering of the parts for the consideration of the jury. The witness unquestionably believed that the parts were the identical parts taken from his car. The weight and effect of this testimony of identification was a matter to be left to the jury in determining the guilt or innocence of the accused.

[3] The objection that the seat covers and the horn were not included in the indictment, because they were not products of the Ford factory, is equally without merit. The bill of particulars which was called for by defendants, and to which there was no objection, did not allege that these articles were manufactured by Ford. Having been

attached to the Ford car and used in operating said car, the parts were as much a part of the Ford car as if they had been specially designed for said car.

[4] It appears that at the beginning of the trial a witness for defendant was absent, and the district attorney admitted that, if such witness was present, he would swear that on October 14, 1924, he sold to Jesse Richey two United States tires.

When it came the defendants' time to offer evidence, their counsel offered this admission for the declared purpose of showing that, within the period between September 15, 1924, when the property is alleged to have been stolen, and November 6, 1924, when the officers found certain tires in possession of defendants, the defendant Jesse Richey was making purchases of tires in the regular course of trade. To the introduction of the admission for the purpose declared, the state objected, and this objection was sustained.

The ruling was obviously proper.

To the admission as made by the district attorney, there could have been no serious ground of objection. But the defendant could not enlarge that admission so as to embrace facts which were clearly not included in the admission. The admission of the sale of particular tires could not be extended so as to show that defendants were general dealers in, and frequent purchasers of, auto parts in due course of trade; but, apart from this, the tires alleged to have been sold by the witness Frank Hunter to one of the defendants was of a different make from the stolen ones.

[5] The third and fourth bills are upon the same subject-matter, and will be considered together.

After the state had closed its evidence in chief, and the defendants had placed their last witness, Oscar Murphy, on the stand, and who had testified to the single fact that he had sold one of the defendants a Ford car a short time before the alleged stolen auto parts had been found in defendants' possession, the state, on cross-examination, asked the witness the following question:

"Q. Mr. Murphy, didn't you meet Mr. D. W. Squyers, deputy sheriff, on the public road about two days before this search was made on or about November 4th, and did you not tell him then that you were at Gene Richey's house when he brought some Ford parts, including seat covers, horn, generator, and starter and wheels, and threw them into his yard, and said. 'by G—d, that is the way he got his, that he didn't have to work for them'?"

To this question the defendants objected, on the ground that the evidence sought was not in cross-examination of any matter brought out in chief; that the state had no right under the guise of impeachment, to lay the basis to offer independent evidence, and on further ground that the evidence was hearsay and related to a conversation which took place out of the presence of the defendants.

The objections were overruled, for the reason that, in the opinion of the court, the evidence was admissible for the purpose of impeaching the witness.

It does not appear from bill 3 whether the witness admitted or denied making the statement imputed to him. We assume, however, that his answer was a denial, since from bill 4 it appears that the state was permitted to prove by the deputy sheriff that Murphy had made the statement to him that he had seen Gene Richey throw certain automobile parts into his (Richey's) yard, accompanying the act with the exclamation already mentioned.

The ruling of the court complained of in these two bills in our opinion was erroneous and extremely prejudicial to the accused parties.

There was no direct or immediate connection between the sale of a Ford car by Murphy to Richey and the statement alleged to have been made by Murphy to the deputy sheriff. The sale of the car and the state-

ment of Murphy were separate and independent matters, remote from each other, and the question put to Murphy could not possibly form a traverse or contradiction of the fact testified to by Murphy—that is, that he had sold Richey a Ford car—nor was such statement inconsistent with the sale of the car.

[6] The rule is well settled that the cross-examination by the state of a defendant's witness must be confined to matters brought out by the defendant in the examination in chief. State v. Allemand, 96 So. 552, 153 La. 746.

[7] The only exception to the rule thus stated is the right to test the memory and the credibility of the witness or when the matter is a proper subject of inquiry for laying the basis for impeaching the witness. In State v. Freddy, 41 So. 436, 117 La. 128, 116 Am. St. Rep. 195, it was held that the defendant cannot cross-examine the state's witnesses as to irrelevant matters, for the purpose of afterwards contradicting them, or for the purpose of opening the door to testimony on such irrelevant matters. See, also, State v. Cox, 68 So. 107, 136 La. 1011. The rule is equally applicable to the state.

If, then, the state cannot cross-examine a defendant's witness on irrelevant matters for the purpose of laying a basis for impeaching the witness or for the purpose of opening the door to testimony on such irrelevant matters, then surely and for more cogent reasons it must be held unfair and exceedingly prejudicial to an accused to permit the state to cross-examine the defendant's witness on matters not brought out on the examination of such witness in chief, nor by the state in its evidence in chief for the purpose of impeaching said witness, or for the purpose of opening the door to the introduction of original and primary evidence.

In this connection it may be stated that, while it was declared by the district attorney that his sole purpose was to impeach the witness Murphy, and while this seems to be the basis of the ruling of the court in admitting the testimony, the fact remains that the inquiry had no relation to the evidence given in chief by Murphy, and had no tendency to contradict or impeach him on any matter to which he had testified.

On the contrary, the inquiry was on a matter wholly disconnected with the examination—a material fact and circumstance, as to which no evidence had been given by the state in chief or by the defendant.

If the state had sought to prove by Murphy on cross-examination that he had seen Richey throw some automobile parts, similar to the ones alleged to have been stolen, into his yard, at the same time making the damaging statement attributed to him, it would have been met with the ready and well-founded objection that such evidence was not in rebuttal, not connected with the direct examination, and was original and primary evidence, which should have been tendered before the state concluded its case in chief.

But Murphy was not asked if he had witnessed the act of Richey referred to.

Obviously it was an attempt by the state, through the guise of impeachment, to place before the jury a fact and circumstance highly incriminating, coupled with an inferential confession of the defendant, which should have formed a part of the state's original testimony.

[8] It is true we find in the record a statement of the district attorney that he had asked the witness Murphy if he was not at the house of Gene Richey, and if he did not see some automobile parts in his yard, and that Murphy replied in the negative; that several questions were asked along this line and denied by Murphy without any objection —all of which preceded the impeaching question to which the bill was reserved.

These facts, however, were not incorporated in the bill, and we are not at liberty to consider them.

[9] The fifth bill relates to a question asked the prosecuting witness in rebuttal, if the battery, one of the articles mentioned, in the indictment, had the appearance of having been lying around the house for a long time. The objection was made that the evidence was not in rebuttal, was irrelevant, and the question called for the opinion of the witness.

The objections were properly overruled. The accused had testified that the battery had been lying around his house for about a year, and it was to negative this fact that the state offered the testimony objected to. It was strictly in rebuttal, was relevant, and was not a mere opinion of the witness.

Bills 6, 7, and 8 relate to objections made to the argument of the district attorney.

The bills show that no ruling was asked of the court and no charge requested. The defendants contented themselves with merely making and noting their objection. We have, however, examined the bills, and can find nothing objectionable in them, or that would constitute reversible error.

Bills 9, 10, and 11 were reserved to certain special charges which the court declined to make to the jury.

[10] The judge states in the bills that each of the requested charges were fully covered by his general charge to the jury, and we accept his statement.

A different situation existed in State v. Hugh Watson (La.) 106 So. 369,[1] recently decided.

In that case the judge merely stated that he gave such charge as in his opinion covered all points necessary for the case. This statement was held not sufficient basis for the conclusion that he had given the particular charge requested.

[1] 159 La. 866.

Here the judge states positively that he had charged the jury in his general charge on each matter stated in the requested charges.

The twelfth bill was reserved to the overruling of a motion for a new trial.

The bill presents nothing requiring serious consideration.

For the reasons assigned, in considering bills Nos. 3 and 4, the conviction and sentence are set aside, and the case is remanded to the lower court to be tried according to law.

OVERTON, J., recused.

---

(107 So. 487)